333 Johnson LLC v Maple 333 Johnson Member, LLC (2025 NY Slip Op 02028)

333 Johnson LLC v Maple 333 Johnson Member, LLC

2025 NY Slip Op 02028

Decided on April 08, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 08, 2025

Before: Kern, J.P., Singh, González, Kennedy, Higgitt, JJ. 

Index No. 657307/20|Appeal No. 3277, 3278|Case No. 2023-05599, 2023-06518|

[*1]333 Johnson LLC, Plaintiff-Appellant,
v
Maple 333 Johnson Member, LLC, et al., Defendants-Respondents.

Mintz Levin Cohn Ferris Glovsky and Popeo P.C., New York (Theresa M. Doherty of counsel), for appellant.
Fried, Frank, Harris, Shriver & Jacobson LLP, New York (Matthew D. Parrott of counsel), for respondents.

Judgment, Supreme Court, New York County (Jennifer G. Schecter, J.), entered December 8, 2023, in favor of defendants, and bringing up for review an order, same court and Justice, entered on or about October 2, 2023, that granted defendants' motion for summary judgment dismissing the amended complaint and dismissed the action with prejudice, unanimously affirmed, without costs. Appeal from aforesaid order, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
In March 2014, plaintiff contracted with a nonparty to purchase an industrial property in Brooklyn. To facilitate the purchase, plaintiff and defendant Maple 333 Johnson Member LLC (Maple), an affiliate of defendant Normandy Real Estate (Normandy), formed Maple 333 Johnson Holdings LLC (the Company). A limited liability company agreement subject to Delaware law governed the Company's operations. Plaintiff and Maple were the sole members of the Company; Maple possessed an 85% interest and plaintiff the remaining 15%. Plaintiff was initially designated the Company's managing member, a role Maple subsequently assumed.
In April 2015, the Company acquired the property for $26.75 million. The property was the Company's only asset.
Section 9.3(a)(i), addressing the appointment, powers and responsibilities of the Company's managing member, provides that the managing member "shall have all of the same powers and duties as a general partner of a general partnership under the laws of the State of Delaware."
Section 12.5 deals with the sale of the property and the right of first offer (ROFO). That section provides, in pertinent part, that
"If [defendant Maple] or [plaintiff] desires to cause a Company Sale pursuant to this Section 12.5(a), then [defendant Maple] or [plaintiff], as applicable (for purposes of this Section 12.5(a), the 'Initiator') shall first give to the other Member (for purposes of this Section 12.5(a), the 'Recipient') notice thereof (an 'Offer Notice'), which Offer Notice shall set forth the price the Initiator would be willing to accept in respect of such Company Sale (the 'ROFO' Price). Within thirty (30) days of receipt of an Offer Notice (the 'Exercise Period'), the Recipient shall have the right to elect (which election shall be irrevocable) t0 purchase or designate its designee to purchase, for the ROFO Price . . ." (emphasis added).
In the event that defendant Maple provided plaintiff with an Offer Notice and plaintiff duly exercised its ROFO, Maple was required to provide plaintiff with a purchase and sale agreement (the contents of which were dictated by the agreement), and "all material due diligence materials not in [plaintiff's] possession relating to the property and the ROFO Sale." If plaintiff declined to exercise its ROFO, failed to duly exercise that right, or waived it, defendant Maple was, subject to certain conditions, free to sell the property to a third party (§§ 12.5[a], [b]).
According to plaintiff, defendants concealed Maple's [*2]plan to sell or lease the property. Plaintiff maintains that defendants failed to keep it accurately informed about third-party interest in the property and Maple's efforts to sell or lease the property, and made misrepresentations about such interests and efforts.
For instance, in August 2017, unbeknownst to plaintiff, Maple retained nonparty Pinnacle Realty to lease or sell the property. Between October 2017 and June 2018, Pinnacle Realty reported to Maple many offers to purchase the property ranging from $34 million to $41 million. At a July 2018 meeting between the parties, defendants' principals represented that the property was an underperforming asset engendering no third-party interest.
In the months preceding the July 2018 meeting, a broker retained by a Normandy affiliate reported to Normandy's principals that nonparty Netflix, the prominent streaming service, was interested in leasing significant space in New York. In March 2018, the broker showed Netflix commercial space at 880-888 Broadway in Manhattan. In the summer of 2018, Normandy and Netflix commenced negotiations regarding the lease of the Broadway premises, and executed a lease for the premises on December 18, 2018.
Two nonparties, Steel and Meadow, were separately interested in buying the Company's property and, in turn, leasing it to Netflix. From August 2018 through October 2018, Steel and Meadow made various offers to Maple to buy the property.
Steel's first offer of $42 million was made to Maple on August 20, 2018. Steel increased its offer to $44.5 million on September 26, 2018. On or about October 8, 2018, Steel again increased its offer, this time to $52 million. Approximately one week later, Meadow matched the $52 million offer. On October 25, 2018, Steel submitted a revised offer of $52.5 million.
On October 26, 2018, principals of defendants called plaintiff to notify it of the $52.5 million offer from Steel. To facilitate the sale of the property to Steel, the principals of defendants requested that plaintiff waive its ROFO. Negotiations between plaintiff and defendants on the content of the ROFO waiver culminated in a letter agreement that provided, in pertinent part,
"1. Subject to the terms and conditions contained in this Letter Agreement, including, without limitation, that the representations and warranties set forth in Section 2 hereof being true and correct, (a) each party hereby (i) consents to the sale of the Property by [the Company] to [Steel] pursuant to the [purchase and sale agreement] (the 'Sale'), and (ii) waives any and all rights of such Party under the Agreement to a [ROFO] on the Property . . ."
The letter agreement further provided the following representations and warranties by Maple: that the purchase price for the property was $52.5 million; that the closing date would be December 27, 2018; that the purchase price was the only consideration to be paid by Steel in connection with the sale; that, other than the purchase and sale agreement [*3](and documents contemplated thereby), an access and indemnification agreement between the Company and Steel, and a term sheet related to the sale, there were no other agreements relating to the Property, the Sale or Purchase between Steel and Maple; and that the purchaser was "not a Maple Party or any Affiliate of any Maple Party, and no Maple Party currently has or will have after the Sale is consummated, any direct or indirect interest in Purchaser or the Property." The letter agreement stated that Maple would be liable to plaintiff for any breach of any representation in the letter agreement. The parties signed the letter agreement and ROFO waiver on December 21, 2018.
After the ROFO waiver was executed, the sale of the property by the Company to Steel was consummated. Steel then leased the property to Netflix. As a result of the various transactions, Netflix was the lessee of both the property and 880-888 Broadway.
Plaintiff first learned of Steel's lease of the property to Netflix in April 2019.
Plaintiff commenced this action against defendants seeking to recover damages for, among other things, breach of fiduciary duty and aiding and abetting breach of fiduciary duty. In its amended complaint, plaintiff alleged that defendants engaged in a scheme to surreptitiously enter into transactions that would result in Netflix leasing both the property and 880-888 Broadway, which transactions would enrich defendants to the detriment of plaintiff. Plaintiff highlighted that, prior to the consummation of the various transactions, it was not informed by defendants of the several offers to purchase the property, it was not informed of Netflix's interest in the property, and it was not informed of the lease transaction relating to 880-888 Broadway. Plaintiff claimed that if defendants had accurately informed plaintiff about Netflix's interest in the property, plaintiff would have demanded that the Company lease the property to Netflix or plaintiff would have exercised its ROFO.
After the completion of discovery, defendants moved for summary judgment dismissing the amended complaint. Supreme Court granted the motion and dismissed the complaint, prompting this appeal.
Supreme Court correctly granted the motion on the ground that, under the operating agreement, Maple's fiduciary duties to plaintiff did not include the duty to make the disclosures insisted by plaintiff.
Reading §§ 9.3(a) and 12.5(a) together and in a manner that harmonizes those provisions and gives both effect, § 12.5(a) narrowed Maple's obligations to make disclosures with respect to the sale of the property. Section 12.5(a) clearly and necessarily limited Maple's disclosure obligations to certain information at certain stages based on certain conditions. If plaintiff was otherwise entitled to information in addition to that provided in § 12.5(a), then that provision would be rendered surplusage. Relatedly, if the sophisticated commercial parties to the agreement wanted members to [*4]have disclosure obligations of the sort advocated for by plaintiff, they could have included them in the agreement. To impose the disclosure obligations demanded by plaintiff would materially alter the detailed contract entered into between the parties. Defendants' duty to disclose information related to the sale of property was limited by the specific terms of the operating agreement, particularly § 12.5. Ultimately, use of the default fiduciary duties reflected in § 9.3(a) would intrude upon the contractual expectations of Maple or be insensible in light of the contractual mechanisms governing the sale of the property, so we must give primacy to a contractual analysis of the dispute (see R.S.M. Inc. v Alliance Capital Mgt. Holdings L.P. , 790 A2d 478, 497-498 [Del Ch 2001]; see also Related Westpac LLC v JER Snowmass LLC , 2010 WL 2929708, *8, 2010 Del Ch LEXIS 158, *28 [Del Ch Apr. 28, 2010, C.A. No. 5001-VCS]). The language of the agreement coupled with the irreconcilability of fiduciary duty principles with the operation of the agreement manifest the clear intention of the parties to preempt fiduciary principles (see R.S.M. Inc. v Alliance Capital Mgt. Holdings L.P. , 790 A2d at 497-498).
The ROFO waiver provides a separate, independent ground to affirm Supreme Court's order. The plain language of paragraph 1 of the letter agreement associated with the ROFO waiver makes clear that Maple's only relevant representations relating to the sale of the property are reflected in the letter agreement (see Weinberg v Waystar, Inc. , 294 A3d 1039, 1043-1044 [Del 2023]). That paragraph provides,
"Subject to the terms and conditions contained in this Letter Agreement , including, without limitation, that the representations and warranties set forth in Section 2 hereof being true and correct, (a) each party hereby (i) consents to the sale of the Property by [the Company] to [Steel] pursuant to the [purchase and sale agreement] (the 'Sale'), and (ii) waives any and all rights of such Party under the Agreement to a [ROFO] on the Property" (emphasis added).
Later in that paragraph, the parties reinforced that the ROFO waiver "is subject to the terms and conditions of th[e] Letter Agreement," and made clear that Maple would be liable to plaintiff for any breach of any representation in the letter agreement . Nowhere in the letter agreement did the parties suggest that, when assessing the rights and obligations of the parties with respect to the ROFO waiver, reference to the underlying LLC agreement (and § 9.1's general fiduciary duty clause) would be permissible.
The letter agreement was the product of negotiations between the sophisticated commercial parties, and plaintiff decided to consent to the sale of the property on the strength of the representations made in the letter agreement. If plaintiff wanted additional representations reflected in the letter agreement, it should have bargained for them.
Because the claim for breach of fiduciary duty fails, the [*5]claim for aiding and abetting also fails.
In light of our conclusion that Supreme Court's order should be affirmed because defendants' fiduciary duties to plaintiff did not include the duty to make the disclosures insisted on by plaintiff, we need not reach any other issue. 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 8, 2025